1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  VANCE'S FOODS, INC.,                    No. 2:11-cv-02943-MCE-GGH

12            Plaintiff,

13      v.                                  <u>MEMORANDUM AND ORDER</u>

14  SPECIAL DIETS EUROPE LIMITED,
    et al.,

15            Defendants.

16

17                          ----oo0oo----

18

19      Plaintiff Vance's Foods, Inc. ("Plaintiff"), seeks

20  injunctive and monetary relief from Defendant Special Diets

21  Europe Limited ("SDE") and individual Defendants Eamon Cotter and

22  Mariel Cotter (collectively, "Defendants") for claims of

23  misappropriation of trade secrets and breach of contract.

24  ///

25  ///

26  ///

27  ///

28  ///

                                    1

Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

**BACKGROUND[2]**

Plaintiff is a corporation organized under the laws of Alaska with its principal place of business in Sacramento, California.  Plaintiff engages in the business of producing and distributing worldwide a non-dairy milk substitute DariFree™.

SDE is an Irish corporation with its offices located in Ireland.  Eamon Cotter and Mariel Cotter (collectively, "the Cotters") are citizens and residents of Ireland.  The Cotters are the sole owners and directors of SDE.

On or about October 7, 2007, Plaintiff entered into two written agreements with SDE.  Pursuant to the first agreement ("Distribution Agreement"), Plaintiff appointed SDE as its exclusive distributor of DariFree™ products in a defined European territory.  Pursuant to the second agreement ("Product Development Agreement"), SDE undertook to develop and distribute a liquid stable version of DariFree™ in Europe.

///

///

---

[1]  Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2]  Unless otherwise noted, the following facts are taken from Plaintiff's Complaint.

1    Under the Product Development Agreement, Plaintiff provided
2 SDE with the formula for DariFree™, disclosed to SDE its
3 manufacturing process and provided SDE with a list of ingredient
4 suppliers.  SDE was to keep the information received from
5 Plaintiff confidential, to use it only for purposes of performing
6 its obligations under the agreement, and to return that
7 information to Plaintiff upon request or upon termination or
8 expiration of the agreement.  Also pursuant to the Product
9 Development Agreement, SDE would have the ten-year exclusive
10 right to manufacture, market and sell the liquid stable
11 DariFree™ product within a specified European territory if SDE:
12 1) developed the liquid product within eighteen months from the
13 start date of the agreement; 2) obtained Plaintiff's written
14 acknowledgment that the product had been adequately developed and
15 was ready for commercial sale; and 3) continually complied with
16 all terms and conditions of the agreement.

17    According to Plaintiff, this business relationship was
18 pretextual and was orchestrated by Defendants for the purpose of
19 accessing, misappropriating and using Plaintiff's confidential
20 information.  Plaintiff alleges that Defendants misappropriated
21 Plaintiff's trade secrets, which Defendants had received for the
22 purpose of developing the liquid version of DariFree™.
23 Plaintiff also claims that Defendants breached the Product
24 Development Agreement by failing to develop the liquid product,
25 violating the confidentiality obligation provided by the contract
26 and further violating numerous other contractual provisions.
27 Plaintiff seeks injunctive relief and both compensatory and
28 punitive damages.

1    Plaintiff originally filed this action in the Superior Court
2  of the State of California, County of Sacramento.  Defendants
3  removed the action to this Court on the basis of diversity
4  jurisdiction and now move to dismiss the Complaint for lack of
5  personal jurisdiction.  For the following reasons, Defendants'
6  Motion is GRANTED in part and DENIED in part.

7

8                              **STANDARD**

9

10   District courts have the authority to dismiss an action for
11 lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  The
12 burden of establishing personal jurisdiction rests with the
13 plaintiff.  <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1015 (9th Cir.
14 2008).  Where, as here, the motion is based on written materials
15 rather than an evidentiary hearing, the plaintiff need only make
16 a prima facie showing of the facts in support of personal
17 jurisdiction.  <u>Id.</u>  In deciding whether a prima facie showing has
18 been made, a court need only consider the pleadings and any
19 submitted affidavits.  <u>Id.</u>  "Although the plaintiff cannot
20 'simply rest on the bare allegations in its complaint,'...
21 uncontroverted allegations in the complaint must be taken as
22 true."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797,
23 800 (9th Cir. 2004) (internal citations omitted).  "Conflicts
24 between parties over statements contained in affidavits must be
25 resolved in the plaintiff's favor."  <u>Id.</u>
26 ///
27 ///
28 ///

                                    4

1     A court granting a motion to dismiss a complaint must decide

2 whether to grant leave to amend.  Leave to amend should be

3 "freely given" where there is no "undue delay, bad faith or

4 dilatory motive on the part of the movant, ... undue prejudice to

5 the opposing party by virtue of allowance of the amendment, [or]

6 futility of the amendment...."  Foman v. Davis, 371 U.S. 178, 182

7 (1962); Eminence Capital, LLC v. Aspen, Inc., 316 F.3d 1048, 1052

8 (9th Cir. 2003) (listing the Foman factors as those to be

9 considered when deciding whether to grant leave to amend).  Not

10 all of these factors merit equal weight.  Rather, "the

11 consideration of prejudice to the opposing party ... carries the

12 greatest weight."  Eminence Capital, 316 F.3d at 1052.  Dismissal

13 without leave to amend is proper only if it is clear that "the

14 complaint could not be saved by any amendment."  Intri-Plex

15 Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007)

16 (internal citations and quotations omitted).

17

18                              **ANALYSIS**

19

20     According to Defendants, this action must be dismissed

21 because this Court lacks jurisdiction over their persons.

22 Defendants are correct with respect to this Court's jurisdiction

23 over Mariel Cotter, but their arguments are rejected as to the

24 remaining Defendants.

25 ///

26 ///

27 ///

28 ///

1   **A.   Applicable Law.**

2

3        Where, as here, there is no federal statute governing

4   personal jurisdiction, courts apply the long-arm statute of the

5   state in which the court sits.  Fed. R. Civ. P. 4(k); <u>Boschetto</u>,

6   539 F.3d at 1015.  California's long-arm statute allows the

7   exercise of jurisdiction to the full extent permitted by federal

8   constitutional due process.  Cal. Civ. Proc. Code § 410.10.

9   Accordingly, "the jurisdictional analyses under state law and

10  federal due process are the same." <u>Schwarzenegger</u>, 374 F.3d at

11  800-01.  For a court to exercise personal jurisdiction over a

12  non-resident defendant, that defendant must have at least

13  "minimum contacts" with the relevant forum such that the exercise

14  of jurisdiction "does not offend traditional notions of fair play

15  and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S.

16  310, 316 (1945).  The defendant's "conduct and connections with

17  the forum State" must be such that the defendant "should

18  reasonably anticipate being haled into court there." <u>World-Wide</u>

19  <u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  "Personal

20  jurisdiction over each defendant must be analyzed separately."

21  <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>,

22  328 F.3d 1122, 1130 (9th Cir. 2003).

23        There are two categories of personal jurisdiction from a due

24  process perspective: general and specific. <u>Boschetto</u>, 539 F.3d

25  at 1016.  General personal jurisdiction allows a forum state to

26  exercise personal jurisdiction over a defendant for any claim

27  related or unrelated to the defendant's contacts with the forum.

28  ///

Rocke v. Canadian Auto. Sport Club, 660 F.2d 395, 398 (9th Cir. 1981).  A court can exercise general jurisdiction over a non-resident defendant when the defendant's contacts with the forum are "substantial" or "continuous and systematic."  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

A court can exercise specific personal jurisdiction over a defendant where the claim "arises out of or has a substantial connection to the defendant's contacts with the forum."  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).  The Ninth Circuit employs a three prong test to determine whether a court can exercise specific jurisdiction over a defendant.  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).  Under this test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. (quoting Schwarzenegger, 374 F.3d at 802).  The plaintiff has the burden of establishing the first two prongs of this test.  Boschetto, 539 F.3d at 1016.  If the plaintiff satisfies the first two prongs, the burden shifts to the defendant who must present a "compelling case" demonstrating that the exercise of jurisdiction would be unreasonable.  Id.

7

The first prong of the test for specific jurisdiction "includes both purposeful availment and purposeful direction," and "may be satisfied by purposeful availment of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). The purposeful availment standard is usually used in contract cases. Id. "The requirement of 'purposeful availment' is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989).

"The purposeful availment standard requires more than foreseeability of causing injury in another state." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 560 (9th Cir. 1995). "The foreseeability that is critical to due process analysis...is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. "The purposeful availment prong prevents defendants from being haled into a jurisdiction through 'random,' 'fortuitous,' or 'attenuated' contacts." Terracom, 49 F.3d at 560. However, the absence of physical contacts with the forum state does not, by itself, defeat personal jurisdiction, as long as defendants "purposefully directed" their "commercial efforts" toward residents of the forum state. Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1398 (9th Cir. 1986).

1    A purposeful direction standard is most often used in tort
2  cases.  Schwarzenegger, 374 F.3d at 802.  In determining whether
3  there has been purposeful direction, courts utilize the "effects"
4  test, which was promulgated in the Supreme Court's decision in
5  Calder v. Jones, 465 U.S. 783 (1984).  See Brayton, 606 F.3d at
6  1128.  To satisfy the "effects" test, "the defendant allegedly
7  must have (1) committed an intentional act, (2) expressly aimed
8  at the forum state, (3) causing harm that the defendant knows is
9  likely to be suffered in the forum state."  Id. (quoting Yahoo!
10 Inc., 433 F.3d at 1206).

11   Some courts have applied the Calder "effects" test even
12 though the claims arose under a contractual relationship.  See,
13 e.g., Language Line Servs., Inc. v. Language Servs. Ass'n, Inc.,
14 No. C 10-02605 JW, 2010 WL 5115671, at *3 (N.D. Cal. Dec. 9,
15 2010) (using the "effects" test where a plaintiff brought both
16 contract and tort claims because the focus of the plaintiff's
17 complaint was on the defendant's tortious conduct).  Other courts
18 have applied a contract analysis to tort claims, where the tort
19 claims arose out of a contract.  See Sher v. Johnson, 911 F.2d
20 1357, 1362 (9th Cir. 1990) (applying purposeful availment
21 analysis where some of plaintiff's claims sounded in tort, but
22 all arose out of the parties' contractual relationship).

23   Under the second prong of the specific jurisdiction test,
24 "the contacts constituting purposeful availment must be the ones
25 that give rise to the current suit."
26 ///
27 ///
28 ///

Bancroft, 223 F.3d at 1088.  The "but for" test is utilized for determining whether this prong is met: "'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." Terracom, 49 F.3d at 561.

Finally, "[f]or jurisdiction to be reasonable, it must comport with fair play and substantial justice." Bancroft, 223 F.3d at 1088.  Reasonableness is presumed once the court finds purposeful availment.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  The burden is on the defendant to put forward a "compelling case" that the exercise of jurisdiction is unreasonable.  Bancroft, 223 F.3d at 1088.  In determining reasonableness, a court must consider seven factors: 1) the extent of the defendant's purposeful interjection into the forum state; 2) the burden on the defendant in defending in the forum; 3) the extent of the conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.  Id.

In the instant case, Plaintiff does not contend that this Court can exercise general personal jurisdiction over any of the Defendants; it argues only for specific jurisdiction.  See Pl.'s Opp'n to MTD, p. 3.  Thus, the question for the Court is whether Plaintiff has sufficiently established each Defendant's minimum contacts with California under the three-prong test articulated by the Ninth Circuit.  See Brayton, 606 F.3d at 1128.
///

1      **B.    Defendant SDE.**

2

3         Defendants argue that SDE lacks the requisite "minimum

4    contacts" with California because: 1) SDE does not have any

5    offices, employees or agents, bank accounts, or real property in

6    California; 2) SDE does not conduct any business in California,

7    is not licensed to do business in California, and does not

8    directly advertize or solicit business in California; 3) SDE's

9    only purpose was to import and distribute Plaintiff's products in

10   Europe; 4) both the Distribution Agreement and Product

11   Development Agreement were negotiated and entered into in

12   Ireland; and 5) any products that SDE received from Plaintiff

13   were shipped from Plaintiff's plant in Utah, not from California.

14   MTD, pp. 2, 4.  Defendants' contentions are unavailing.

15        "The Supreme Court has consistently rejected the notion that

16   absence of physical contacts with a forum state can defeat

17   personal jurisdiction, '[s]o long as a commercial actor's efforts

18   were purposefully directed toward residents of another State.'"

19   Haisten, 784 F.2d at 1398.  While "the mere existence of a

20   contract with a party in the forum state does not constitute

21   sufficient minimum contacts for jurisdiction," Sher, 911 F.2d at

22   1362, "the solicitation of business in the forum state that

23   results in business being transacted or contract negotiations

24   will probably be considered purposeful availment." Sinatra v.

25   Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).

26   ///

27   ///

28   ///

Courts also consider such factors as "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing" in determining "whether the defendant's contacts are 'substantial' and not merely 'random, fortuitous, or attenuated.'"   Sher, 911 F.2d at 1362.

The Declaration of Susan Boom ("Boom Decl."),[3] filed in support of Plaintiff's Opposition to Defendants' Motion to Dismiss, and a Memorandum prepared by Mr. Cotter, which is attached to Susan Boom's Declaration as a part of Exhibit 3, demonstrate that, in 2003, SDE, through its owner and director Mr. Cotter, solicited business from Plaintiff in California by contacting Plaintiff's founder and former director Vance Abersold at Mr. Abersold's Sacramento, California, home.  Boom Decl. ¶ 12, Ex. 3.  This initial contact led to the development of a continuing business relationship between Plaintiff and SDE which culminated in the two agreements executed in 2007.  Compl. ¶¶ 7-8; Boom Decl. ¶¶ 6,7,10,13,14, Exs. 1-3.  In fact, the very purpose of SDE's creation, as conceded by Defendants, was to develop a distributorship relationship with Plaintiff.  See Declaration of Eamon Cotter ("E. Cotter Decl.") ¶ 3; Declaration of Mariel Cotter ("M. Cotter Decl.") ¶ 3.  From the beginning, SDE persistently sought exclusive rights to distribute a product produced by a California-based Plaintiff.  Boom Decl. Ex. 3.

---

[3] Defendants have made several evidentiary objections to Susan Boom's Declaration.  The Court overrules Defendants' evidentiary objections Nos. 2 and 6.  The Court does not address the remaining evidentiary objections, because it did not rely on those sections of the Declaration to which Defendants object.

1  SDE knew that it was entering into a long-term contractual
2  relationship with a company located in California because both
3  agreements specifically stated that SDE's principal place of
4  business was in Sacramento, California.  Boom Decl. Exs. 1 & 2.

5      Thus, SDE "has taken deliberate action within the forum
6  state" and "has created continuing obligations to forum
7  residents," which satisfies the requirements of the purposeful
8  availment prong.  See Ballard, 65 F.3d at 1498; see also St. Jude
9  Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 592 (8th Cir.
10 2001) (concluding that a nonresident, who "aggressively pursue[d]
11 a business relationship" with a forum state's resident regarding
12 distribution of goods manufactured in the forum state, had
13 sufficient minimum contacts with the forum state to satisfy the
14 due process requirements on claims relating to the
15 distributorship agreement).

16     Moreover, both agreements provide that any dispute arising
17 between the parties would be governed by California law and the
18 parties would attempt to mediate such a dispute in California.
19 Boom Decl. Exs. 1 & 2.  While the choice-of-law clause is not
20 sufficient by itself to determine that Defendants availed
21 themselves of the benefits and protections of the laws of the
22 forum state, it is a relevant factor.  Burger King Corp. v.
23 Rudzewicz, 471 U.S. 462, 482 (1985).

24     Defendants nonetheless rely on this Court's decision in
25 Anwan v. Aroostook Med. Ctr., No. 2:09-cv-01724-MCE-DAD, 2009
26 LEXIS 96758 (E.D. Cal. Oct. 19, 2009), in which this Court,
27 according to Defendants, declined to exercise personal
28 jurisdiction over defendants "under analogous circumstances."

13

1   Reply, p. 4.)   The Anwan case is, however, entirely

2   distinguishable from the instant case.   Unlike SDE, the

3   defendants in Anwan did not solicit any relationship with the

4   plaintiff in California.   Id. at *17.   In fact, it was the

5   plaintiff who initiated the parties' relationship by responding

6   to the defendants' advertisement in the New England Journal of

7   Medicine.   Id.   Moreover, the employment contract at issue in

8   Anwan had a choice-of-law provision that stated the laws of Maine

9   governed the parties' contractual relationship.   Id.   Defendants'

10   reliance on Anwan to demonstrate that this Court should not

11   exercise personal jurisdiction over SDE is therefore misplaced,

12   and Plaintiff has satisfied the first prong of the test for

13   specific jurisdiction by establishing that SDE purposefully

14   availed itself of privileges of conducting business in

15   California.[4]

16

17   [4] Because both of Plaintiff's claims, including the claim
for misappropriation of trade secrets, arise out of the parties'

18   contractual relationship, it is not necessary for the Court to
conduct the "purposeful direction" analysis.   See Sher, 911 F.2d

19   at 1362.   However, were the Court to consider the "purposeful
direction" prong, it would conclude that Plaintiff has

20   sufficiently demonstrated that SDE purposefully directed its
tortious actions at California under the "effects" test.   See

21   Brayton, 606 F.3d at 1128. First, Plaintiff has alleged that SDE
engaged in intentional tortious acts of trade secret

22   misappropriation, thus satisfying the first prong of the
"effects" test.   See id.   The second prong is also satisfied

23   because SDE allegedly "engaged in wrongful conduct targeted at a
plaintiff whom [SDE] knows to be a resident of the forum state."

24   See Bancorft, 223 F.3d at 1087.   Finally, if SDE misappropriated
Plaintiff's trade secrets, it should have known that Plaintiff

25   would likely suffer harm in California, which is where
Plaintiff's principal place of business is located.   See Dole

26   Food Co., Inc. v. Watts, 303 F.3d 1104, 1113-14 (9th Cir.
2002)(Courts "rel[y] in significant part on the principal place

27   of business in determining the location of a corporation's place
of economic injury.").

28

14

1   Plaintiff also has satisfied the second prong of the test
2   for specific personal jurisdiction.  But for SDE's solicitation
3   of the contractual relationship with a California-based Plaintiff
4   and entering into two long-term agreements with Plaintiff,
5   Defendants would not have obtained Plaintiff's confidential
6   information, and thus Plaintiff's causes of action for breach of
7   contract and misappropriation of trade secrets would not have
8   arisen.  See Terracom, 49 F.3d at 561.

9   Because Plaintiff has satisfied the test's first two prongs,
10  the burden is on Defendants to put forward a "compelling case"
11  that the exercise of personal jurisdiction is unreasonable.  See
12  Bancroft, 223 F.3d at 1088.  Defendants must demonstrate that
13  litigating this case in California would be "so gravely difficult
14  and inconvenient" that it puts SDE at "a severe disadvantage" in
15  comparison to Plaintiff.  Burger King Corp., 471 U.S. at 478.  In
16  making this determination, the Court must consider the seven
17  "reasonableness" factors.  See Bancroft, 223 F.3d at 1088

18  First, the "purposeful interjection" factor weighs in favor
19  of Plaintiff.  The "purposeful interjection" analysis is
20  substantially similar to the determination of "purposeful
21  availment."  Where a defendant has only attenuated contacts with
22  a forum, the "slightness of the purposeful interjection
23  'militates against' a finding of the reasonableness of
24  jurisdiction."  Ins. Co. of North America v. Marina Salina Cruz,
25  649 F.2d 1266, 1271 (9th Cir. 1981).
26  ///
27  ///
28  ///

15

1  The instant case does not present a situation where a defendant

2  enters into an "attenuated" or "random" contract with a foreign

3  resident, so that it would be unreasonable to hale the defendant

4  into a court in the foreign forum. See Terracom, 49 F.3d at 560.

5  SDE was created for the sole purpose of establishing and

6  developing a continuing long-term distributorship relationship

7  with one contractual party -- a California-based Plaintiff.

8  Under these circumstances, SDE sufficiently "interjected" itself

9  into the California market so as to subject itself to this

10  Court's jurisdiction.  Thus, the first factor weighs strongly in

11  favor of Plaintiff.

12      The second factor considers the burden on SDE in defending

13  in this forum.  When a defendant is a non-U.S. citizen, "[t]he

14  unique burdens placed upon one who must defend oneself in a

15  foreign legal system should have significant weight in assessing

16  the reasonableness of stretching the long arm personal

17  jurisdiction over national borders."  Tuazon v. R.J. Reynolds

18  Tobacco Co., 433 F.3d 1163, 1175 (9th Cir. 2006) (quoting Asahi

19  Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 114 (1987)).

20  Plaintiff argues that the burden on SDE in having to defend this

21  case in California would not be substantial as SDE itself agreed

22  to mediate any dispute arising of the agreements in California.

23  Pl.'s Opp'n at 11.  Moreover, pursuant to the agreements,

24  Defendants agreed to arbitrate any disputes in Illinois.  Boom

25  Decl. Exs. 1 & 2.  The Court fails to see how litigating in

26  California would be substantially more burdensome for SBE than

27  arbitrating in Illinois.  Thus, this factor weighs only slightly

28  in favor of SDE.

16

1   The third factor examines the extent to which this Court's
2   exercise of jurisdiction over SDE would conflict with sovereignty
3   of Ireland.  The Supreme Court stated that "[g]reat care and
4   reserve should be exercised when extending our notions of
5   personal jurisdiction into the international field." Asahi Metal
6   Idus., 480 U.S. at 115.  "[L]itigation against an alien defendant
7   creates higher jurisdictional barrier than litigation against a
8   citizen from a sister state because important sovereignty
9   concerns exist." Sinatra, 854 F.2d at 1199.  "In determining how
10  much weight to give this factor, the Ninth Circuit has focused on
11  the presence or absence of connections to the United States in
12  general, not just to the forum state." Bou-Matic, L.L.C. v.
13  Ollimac Dairy, Inc., No. 1:05-CV-0203 OWW SMS, 2006 WL 658602, at
14  *6 (E.D. Cal. March 15, 2006).  "Sovereignty concerns weigh more
15  heavily when defendants have no United States-based
16  relationships." Id.  (citing Sinatra, 854 F.2d 1191).  By
17  entering into a long-term contractual relationship with a
18  California-based Plaintiff, by negotiating the terms of this
19  relationship in Utah, by agreeing to mediate potential disputes
20  in California and to arbitrate such disputes in Illinois, and by
21  engaging in continuous communications and business dealings with
22  a California-based Plaintiff over the course of several years,
23  SDE sought and obtained extensive and continuous contacts with
24  the American market and should expect to be haled into U.S.
25  courts.  Moreover, Defendants have not cited to any Irish foreign
26  policy, law or political consideration that would make this
27  Court's jurisdiction over SDE unreasonable.
28  ///

17

In fact, an Irish court would have to apply California law in interpreting the provisions of the agreements at issue, because the parties specifically chose the laws of this state to govern their potential contractual disputes.  See Boom Decl. Exs. 1 & 2. Thus, this factor does not substantially weigh in SDE's favor or is neutral.

The fourth factor is concerned with California's interest in adjudicating the matter.  "California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured."  Sinatra, 854 F.2d at 1200; see also Language Line Servs., 2010 WL 5115671, at *5 ("California has a strong interest in adjudicating a dispute involving misappropriation of the trade secret of a California-based corporation.").  Plaintiff's principal place of business is in California.  Thus, California has a substantial interest in adjudicating the instant dispute.  Moreover, under the choice-of-law provisions of the agreements, both agreements are to be interpreted under the laws of California.  See Boom Decl. Exs. 1 & 2.  California courts have a strong interest in interpreting the laws of their own state.  Thus, this factor weighs in Plaintiff's favor.

Under the fifth factor, the court evaluates the efficiency of resolution in the forum.  "This factor focuses on the location of the evidence and witnesses."  Wolf Designs, Inc. v. DHR & Co., 322 F. Supp. 2d 1065, 1074 (N.D. Cal. 2004).  "The site where the events in question took place and most of the evidence is located is usually the most efficient forum."  Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 302 (9th Cir. 1986).

18

However, the "efficiency" factor "is no longer weighed heavily given the modern advances in communication and transportation." Wolf Designs, 322 F. Supp. 2d at 1074.  Defendants argue that "most, if not all, of the evidence and witnesses in this action are located in Ireland."  Defs.' Reply at 9.  Because Plaintiff has not proffered any evidence to the contrary, this factor weighs in favor of Defendants.

The sixth factor considers the importance of Plaintiff receiving a convenient and effective resolution.  In the Ninth Circuit, "the plaintiff's convenience is not of paramount importance."  Dole Food Co., 303 F.3d at 1116.  Plaintiff is located in California as is the protected trade information.  It will likely place a substantial burden on Plaintiff to litigate this case in a different forum, especially in Ireland.  Thus, this factor, although given little weight, favors Plaintiff.

Finally, the last factor considers whether an alternative forum is available.  Defendants argue that the Product Development Agreement at issue provides for resolution of any dispute arising out of the agreement by arbitration in the State of Illinois.  Another potential forum would be in Ireland.  Because alternative fora are available, this factor weighs in favor of SDE.  However, by arguing that Illinois is a suitable alternative forum, Defendants substantially undermine their earlier argument that litigating in the United States would place any undue burden on them.

Upon consideration of all of the factors, the Court finds that Defendants have not put forward a "compelling case" why exercise of personal jurisdiction over SDE would be unreasonable.

19

1    Accordingly, the Court may properly exercise personal

2    jurisdiction over Defendant SDE, and Defendants' Motion to

3    Dismiss Plaintiff's Complaint as to Defendant SDE is DENIED.

4

5                    **C.    Defendant Eamon Cotter.**

6

7         Defendants argue that Eamon Cotter lacks "minimum contacts"

8    with California because Mr. Cotter: 1) is a citizen of Ireland,

9    residing and working in Ireland; 2) has only visited California

10   on two occasions for personal reasons unrelated to any claims at

11   issue; and 3) did not conduct business on behalf of SDE during

12   his trips to California.  MTD, p. 4.  Defendants' arguments are

13   unpersuasive.

14        "Under the fiduciary shield doctrine, a person's mere

15   association with a corporation that causes injury to the forum

16   state is not sufficient in itself to permit that forum to assert

17   jurisdiction over the person." Davis v. Metro Prods., Inc.,

18   885 F.2d 515, 520 (9th Cir. 1989).  However, defendants' status

19   as corporate officers or employees "does not somehow isolate them

20   from jurisdiction.  Each defendant's contacts with the forum

21   State must be assessed individually." Calder, 465 U.S. at 790.

22   A state's "long-arm statute may, consistent with constitutional

23   due process, allow assertion of personal jurisdiction over

24   officers of a corporation as long as the court finds those

25   officers to have sufficient minimum contacts" with the forum

26   state. Davis, 885 F.2d at 522.

27   ///

28   ///

1  Courts usually find personal jurisdiction over a corporate
2  officer where a plaintiff demonstrates that a corporate officer
3  is personally liable for wrongdoing in the forum or if the
4  corporation is the alter ago of the individual officer.  Id. at
5  520-21; Fasugbe v. Willms, No. CIV. 2:10-2320 WBS KJN, 2011 WL
6  3667440, at *3 (E.D. Cal. Aug. 22, 2011).  Plaintiff alleges that
7  Eamon Cotter individually availed himself of personal
8  jurisdiction in California and also is an alter ego of SDE.
9  Compl. ¶ 2.

10      Courts also find personal availment on the part of a
11  corporate officer when the officer "was the 'guiding spirit'
12  behind the wrongful conduct,...or the 'central figure' in the
13  challenged corporate activity."  Wolf Designs, 322 F. Supp. 2d at
14  1072 (quoting Davis, 885 F.2d at 524 n.10); see also Allstar
15  Mktg. Group, LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109,
16  1120 (C.D. Cal. 2009) ("Courts have thus found a corporate
17  officer's contacts on behalf of a corporation sufficient to
18  subject the officer to personal jurisdiction where the officer
19  'is a "primary participant" in the alleged wrongdoing' or 'had
20  control of, and direct participation in the alleged activities.'");
21  Matsunoki Group, Inc. v. Timberwork Oregon, Inc., No. C 08-04078 CW,
22  2009 WL 1033818, at *4 (N.D. Cal. Apr. 16, 2009) ("A plaintiff may
23  show that a corporate employee is the moving, active, conscious
24  force behind the infringing activity by demonstrating that the
25  corporate officer directs, controls, ratifies, or participates in
26  the infringing activity,...or acts as the 'guiding spirit and the
27  active directing hand in full charge of [the corporation's]
28  operations.'") (internal citations omitted).

21

1    Plaintiff has sufficiently demonstrated that Eamon Cotter
2  was the "guiding spirit" and the "central figure" behind SDE's
3  business relationship with Plaintiff and behind the alleged
4  breach of contract and the alleged misappropriation of trade
5  secrets.  According to the Declaration of Susan Boom and the
6  exhibits attached thereto, Mr. Cotter personally contacted
7  Plaintiff's founder, Vance Abersold, at Mr. Abersold's home in
8  Sacramento, California, with the purpose of soliciting a
9  contractual relationship with Plaintiff.  Boom Decl. ¶ 12, Ex. 3.
10  Later, Mr. Cotter met with Mr. Abersold in person in Salt Lake
11  City, Utah, to conduct business negotiations.  Id. ¶ 13, Ex. 3.

12    Moreover, Mr. Cotter personally visited Sacramento in 2005,
13  and Plaintiff has presented evidence sufficiently demonstrating
14  that Mr. Cotter conducted business negotiations with the members
15  of Mr. Abersold's family during that visit.  Id. ¶ 11, Ex. 3.
16  Mr. Cotter contends in his own Declaration that his visit to
17  Sacramento was a personal trip during which he did not conduct
18  any business on behalf of SDE.  E. Cotter Decl. ¶ 7.  While
19  Mr. Cotter concedes that the purpose of his trip was to attend a
20  funeral, he conveniently withholds, however, whose funeral it
21  was.  As Susan Boom's Declaration demonstrates, Mr. Cotter
22  attended the funeral of the founder of Vance's Foods,
23  Mr. Abersold.  Boom Decl. ¶ 11.  Plaintiff also presented a copy
24  of e-mail correspondence between Mr. Cotter and Glenn Abersold,
25  Mr. Abersold's son, in which Mr. Cotter acknowledged that he had
26  met with Ms. Boom during his visit to Sacramento, and that he had
27  talked to Glenn Abersold about "the European project" during that
28  visit.  Id. Ex. 3.

22

This evidence sufficiently establishes that Mr. Cotter discussed business matters with members of Mr. Abersold's family during the funeral reception in Sacramento.  Moreover, in furtherance of that discussion, Mr. Cotter sent a memorandum seeking an exclusive distributorship contract to both Glenn Abersold and Susan Boom.  Id.

Further, after Vance Abersold's death, Mr. Cotter continued soliciting exclusive distributorship and product development opportunities through communications directed at Plaintiff in California.  Id. ¶ 14, Ex. 3.  Susan Boom's declaration and the attached exhibits plausibly demonstrate that Mr. Cotter personally negotiated both agreements at issue with Plaintiff's representatives.  Id. ¶ 14, Exs. 3-7.  Thus, taking the uncontroverted allegations as true, and construing conflicts between the facts in Plaintiff's favor, Plaintiff has presented sufficient evidence to demonstrate that Mr. Cotter personally availed himself of the privileges of conducting business in California.

Plaintiff also alleges that Mr. Cotter is subject to this Court's specific personal jurisdiction because he is an alter ego of SDE.  Compl. ¶ 2.  The Ninth Circuit stated that courts can exercise jurisdiction over an individual acting in an official capacity by "piercing the corporate veil" for jurisdictional purposes where "the corporation is the agent or alter ego of the individual defendant,...or where there is an identity of interests between the corporation and the individuals."

///

///

1  <u>Davis</u>, 885 F.2d at 520-21 (internal citations omitted); <u>see</u> <u>also</u>

2  <u>Matsunoki Group</u>, 2009 WL 1033818, at *5 ("[T]o justify

3  disregarding the corporate veil under the alter ego doctrine, the

4  plaintiff must show the unity of interest and ownership such that

5  separate personalities of corporation and individuals do not

6  exist and that it would be unjust to shield the defendants behind

7  the corporate veil.").

8      Plaintiff has sufficiently demonstrated that SDE is

9  Mr. Cotter's alter ego.  Plaintiff alleges, and Defendants

10 concede, that Mr. Cotter is the founding owner and the president

11 of SDE.  Compl. ¶ 2; Boom Decl. Ex. 3; E. Cotter Decl. ¶ 2.

12 Mr. Cotter appears to enjoy significant, if not complete, control

13 over decisions made on behalf of SDE.  Susan Boom's Declaration

14 and the exhibits attached thereto demonstrate that Mr. Cotter was

15 the only person who was involved in the negotiations regarding

16 SDE's distributorship rights, first, with Mr. Abersold, and then

17 with Vance's children, Susan Boom and Glenn Abersold.

18     Moreover, the memorandum that Mr. Cotter prepared for

19 Ms. Boom during negotiation of the agreements at issue clearly

20 indicates that Mr. Cotter was personally interested in

21 distributorship rights for DariFree™.  <u>See</u> Boom Decl. Ex. 3.  As

22 demonstrated by Mr. Cotter's memorandum, during his initial

23 conversation with Mr. Abersold, Mr. Cotter stated, "I explained

24 to Vance...how <u>I</u> was interested in promoting DariFree in Europe,"

25 and "<u>I</u> wanted exclusive rights to sell DariFree in Europe".  <u>See</u>

26 <u>id.</u> (emphasis added).

27 ///

28 ///

1    Moreover, Mr. Cotter concedes that SDE was created for the sole
2    purpose of distributing Plaintiff's product in Europe, E. Cotter
3    Decl. ¶ 3, which is the very goal that Mr. Cotter personally
4    sought to achieve by contacting Plaintiff in California.
5    Plaintiff has thus sufficiently demonstrated that Mr. Cotter is
6    SDE's alter ego for the purposes of establishing this Court's
7    personal jurisdiction.

8        As to the second and third prongs of the test for specific
9    personal jurisdiction, the Court's analysis of those prongs with
10   respect to SBE is equally applicable to establishing the Court's
11   personal jurisdiction over Mr. Cotter as Plaintiff has
12   sufficiently established that Mr. Cotter is SDE's alter ego for
13   jurisdictional purposes.  The Court can therefore exercise
14   specific personal jurisdiction over Mr. Cotter.  Accordingly, the
15   Court denies Defendants' motion to dismiss Plaintiff's Complaint
16   as to Defendant Eamon Cotter.

17

18       **D.   Defendant Mariel Cotter.**

19

20       Defendants contend that the Court does not have personal
21   jurisdiction over Mariel Cotter because she: 1) is a citizen of
22   Ireland, residing and working in Ireland; and 2) does not have
23   any contacts with California and has never visited California.
24   MTD at 4.  Defendants' argument as to Ms. Cotter is persuasive.

25       Mariel Cotter's mere association with SDE does not, by
26   itself, make her subject to personal jurisdiction in California,
27   see Davis, 885 F.2d at 520, nor does her association with
28   Mr. Cotter make her subject to such jurisdiction.

Moreover, "mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." <u>Wolf Designs</u>, 322 F. Supp. 2d at 1072.

Plaintiff's conclusory allegations that Ms. Cotter is an alter ego of SDE and also individually availed herself of this state's forum are not sufficient to subject Ms. Cotter to personal jurisdiction in California. <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009) (a court is not required to accept as true a "legal conclusion couched as a factual allegation."); <u>see also</u> <u>Fasugbe</u>, 2011 WL 3667440, at *3 (declining to exercise personal jurisdiction over a corporate officer when the plaintiffs' allegations contained merely "conclusory statements that he was a 'guiding spirit' and 'central figure' and made all final decisions."). Plaintiff has not alleged that Ms. Cotter personally solicited business in California, ever met with residents of California to conduct business here, or engaged in any other conduct directed at California. The fact that Ms. Cotter signed the agreements at issue on behalf of SDE is insufficient to establish this Court's personal jurisdiction over her without some further facts demonstrating Ms. Cotter's active engagement in the business relationship with Plaintiff or her personal participation in the alleged misappropriation of Plaintiff's trade secret information.

///

///

///

1    Plaintiff's only factual allegation demonstrating
2  Ms. Cotter's participation in the alleged acts concerns one
3  telephone conversation between Ms. Cotter and a representative of
4  Plaintiff.  Boom Decl. ¶ 17, Ex. 6.  This allegation is
5  insufficient to plausibly demonstrate that Mariel was a "guiding
6  spirit" behind the alleged wrongful conduct, see Wolf Designs,
7  322 F. Supp. 2d at 1072, nor has Plaintiff made a prima facie
8  showing that there is such unity of interest and ownership
9  between SDE and Ms. Cotter that she is SDE's alter ego.  See
10 Davis, 885 F.2d at 520-21.  Plaintiff has thus failed to allege
11 sufficient personal conduct directed at California that would
12 justify hailing Ms. Cotter into this Court.  Accordingly, the
13 Court grants with leave to amend Defendants' motion to dismiss
14 Defendant Mariel Cotter from this action.
15
16                          **CONCLUSION**
17
18    For the foregoing reasons, the Court hereby GRANTS with
19 leave to amend Defendants' Motion to Dismiss Plaintiff's
20 Complaint as to Defendant Mariel Cotter, and DENIES the Motion as
21 to Defendants Special Diet Europe and Eamon Cotter.  Not later
22 than twenty (20) days following the date this Memorandum and
23 Order is electronically filed, Plaintiff may (but is not required
24 to) file an amended complaint.
25 ///
26 ///
27 ///
28 ///

                              27

1  If no amended complaint is filed within said twenty (20) day
2  period, without further notice to the parties, this action will
3  be dismissed as to Mariel Cotter with prejudice.
4       IT IS SO ORDERED.
5
   Dated: April 15, 2012
6
7
8       _____
        MORRISON C. ENGLAND, JR.
        UNITED STATES DISTRICT JUDGE
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                           28